## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| DEVIN KNIGHT, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **CIVIL ACTION** |
| | ) | **No. 06-2299-KHV** |
| CITY OF PRAIRIE VILLAGE, KANSAS, | ) | |
| BOB PRYZBY, MARK GILMORE, | ) | |
| and JOHN WALLER, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

Devin Knight, pro se, brings suit against the City of Prairie Village, Kansas ("the City"), and City employees Bob Pryzby, Mark Gilmore and John Waller, alleging that defendants (1) subjected him to a racially hostile work environment; (2) because of race, placed conditions on his promotion and terminated his employment; and (3) in retaliation for protected activity, placed conditions on his promotion and terminated his employment, all in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.  This matter comes before the Court on Defendants' Motion For Summary Judgment (Doc. #46) filed November 19, 2007.  For reasons stated below, the Court sustains defendants' motion.

## Legal Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."  Anderson, 477 U.S. at 248.  A "genuine" factual dispute requires more than

a mere scintilla of evidence.  Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991).  Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which [he] carries the burden of proof."  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).  The nonmoving party may not rest on his pleadings but must set forth specific facts.  Applied Genetics, 912 F.2d at 1241.

"[W]e must view the record in a light most favorable to the [party] opposing the motion for summary judgment."  Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991).  Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative.  Anderson, 477 U.S. at 250-51.  "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial."  Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).  Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson, 477 U.S. at 251-52.

### Facts

Plaintiff's opposition brief does not set forth the specific paragraphs in defendants' memorandum that he disputes, does not specifically contradict defendants' factual assertions with reference to those portions of the record upon which he relies, does not set forth additional facts in separately numbered

2

paragraphs and does not include any affidavits, declarations or other materials in compliance with Rule 56(e), Fed. R. Civ. P.[1]  Accordingly, under D. Kan. Rule 56.1(b), the Court accepts defendants' factual statements – which are adequately supported by record evidence – as true.[2]

For summary judgment purposes, the following facts are uncontroverted and deemed admitted.

The City is a Kansas municipal corporation which employs approximately 28 full and part-time employees in the Public Works Department.  Bob Pryzby is the Director of the Public Works Department.  Mark Gilmore is a crew leader and John Waller is a street maintenance worker.

On January 3, 2001, the City hired plaintiff, an African American, to work as a grounds laborer. In February of 2004, the City promoted plaintiff to crew leader.  During his employment, plaintiff

---

[1]     The Court has reviewed the digital video disc that plaintiff filed as an exhibit to his response.  See Exhibit to Doc. #48.  Even if the exhibit was authenticated, plaintiff has not demonstrated that it contains evidence which creates a genuine issue of material fact.

[2]     D. Kan. Rule 56.1 provides as follows:

(b) Opposing Memorandum.
(1) A memorandum in opposition to a motion for summary judgment shall begin with a section that contains a concise statement of material facts as to which the party contends a genuine issue exists. Each fact in dispute shall be numbered by paragraph, shall refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, shall state the number of movant's fact that is disputed.
(2) If the party opposing summary judgment relies on any facts not in movant's memorandum, that party shall set forth each additional fact in a separately numbered paragraph, supported by references to the record, in the manner required by subsection (a), above. All material facts set forth in this statement of the non-moving party shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the reply of the moving party.

D. Kan. Rule 56.1.

3

received pay increases and satisfactory performance evaluations.

During plaintiff's employment, the City maintained policies prohibiting harassment, discrimination and retaliation. Plaintiff was aware of the policies and understood that he could make complaints of harassment and discrimination to his supervisor or to anyone in the Human Resources Department.

In July of 2001, plaintiff was talking to some other employees when he heard Gilmore utter the word "nigger." Plaintiff did not hear any other part of Gilmore's conversation and he did not know the context of the comment. According to plaintiff, "He's calling me a nigger, whether he's saying it directly, which we know he didn't directly call me a nigger, but if he was referring to African Americans in that way, I'm an African American." Plaintiff's Depo., attached as Ex. A to Defendant's Memorandum (Doc. #47) at 61. Plaintiff reported Gilmore's comment to his supervisor, Chris Johnson, who told him to report it Pryzby. Plaintiff did so. The City counseled Gilmore for his conduct, and conducted harassment training for all Public Works Department employees, including Gilmore.

In July of 2001, plaintiff heard co-workers Waller and Jeff Gouvion, both Caucasian, make racist remarks. Specifically, Waller asked plaintiff if he brought chicken for lunch and Gouvion made comments about rap music. Plaintiff told Johnson about the comments, but he did not consider his conversation with Johnson to be a complaint. Plaintiff never reported the comments to Pryzby or the Human Resources Department. Pryzby never heard about the racist comments by Waller or Gouvion until after plaintiff filed this lawsuit.

In February of 2004, the City promoted plaintiff to crew leader and placed him on probation and

gave him an incremental pay increase.[3]  When he was promoted to crew leader, plaintiff skipped a promotional level.  Pryzby believed that plaintiff could handle the position and therefore promoted him on probation and provided him incremental pay increases to ensure that he developed the skills necessary to succeed.  Pryzby has promoted other employees who jumped promotional levels (including Caucasians) by placing them on probation and providing incremental pay raises.  Plaintiff does not know of any Caucasian employee who received a promotion without being placed on probation.

On June 5, 2004, Latina Rucker, plaintiff's then-estranged wife, filed a report that plaintiff had assaulted her at his parents' home.  Police in Kansas City, Missouri arrested plaintiff and charged him with domestic assault.  At the time of the assault, Rucker worked as a police officer for the City.

After the incident on June 5, Charles Grover, the City Police Chief, contacted Pryzby, plaintiff's supervisor.  Grover told Pryzby that Rucker had sustained a fractured jaw in the assault.  Grover told Pryzby that this was not Rucker's first "run-in" with plaintiff and that plaintiff had made threatening phone calls to Rucker.

On June 14, 2004, Pryzby placed plaintiff on administrative leave with pay pending an investigation whether plaintiff had violated City personnel policies, including Policy No. 415 (Employee Conduct) and 419 (Harassment/Sexual Harassment).  Policy No. 415, Employee Conduct, provides in part as follows:

---

[3]      Gilmore initially told plaintiff and other employees that Jeff Patterson, a Caucasian employee from another department, had been promoted.  Although he concedes that he had no knowledge about Patterson's experience and qualifications, plaintiff thought that he had more experience than Patterson.  When plaintiff complained to Pryzby about Patterson's promotion, Pryzby told plaintiff that Patterson had not been promoted and that plaintiff was being promoted.  Pryzby told plaintiff that he did not know why Gilmore would have stated that Patterson had been promoted.  After plaintiff was terminated, Pryzby promoted Patterson to crew leader.  As with plaintiff, Pryzby placed Patterson on probation and gave him an incremental salary increase.

5

The purpose of a policy on employee conduct is to establish accepted modes of behavior applicable uniformly to all employees so that employees, supervisors and department heads, including city officials, whether elected or appointed, will be aware of conduct which cannot and will not be condoned as representative of Prairie Village City Government.

All persons employed by the City of Prairie Village, its elected officials, or members of its independent boards and agencies are expected to maintain the highest standards of conduct in the performance of their duties and as representatives of the City. Incidents of misconduct will not be tolerated and will subject the employee to disciplinary action and/or termination. * * *

Incidents of Misconduct.

Conduct Including But Not Limited To: * * *

g. Maintaining a personal appearance or demeanor which could create or cause public embarrassment, ridicule, social complaint or otherwise adversely reflects upon job performance or on the City.

I. Failure to adhere to or comply with established rules and regulations for the safety of employees or the public or the endangering of employees or the public by the failure to exercise due care in the performance of job duties.

l. Unprofessional conduct.

r. Any violent, abusive or physical misbehavior.

s. Any action of brutality or cruelty.

v. Any act or conduct which violates established duties or rights of other employees or the public, including but not limited to rights of privacy, sexual harassment, racial prejudice, defamation and physical safety.

Ex. E to Memorandum Of Law In Support Of Defendants' Motion For Summary Judgment ("Defendants' Memorandum") (Doc. #47) filed November 19, 2007 at 1-3.

Policy No. 418, Harassment/Sexual Harassment, states in part as follows:

Harassment of any type will not be tolerated.

[A]ny physical act of aggression such as hitting, pushing, shoving or threats of physical aggression are strictly prohibited. The city will not condone any language or action that

6

would cause its employees to feel unequal, inferior or harassed.

Ex. F to Defendants' Memorandum (Doc. #47) at 1.  Plaintiff was aware of and understood these policies.

During the investigation, Melissa Hoag Sherman, an attorney for the City, interviewed several employees, including plaintiff and Rucker.  Rucker told Sherman that plaintiff had dislocated and fractured her jaw and that plaintiff had left her a threatening telephone message.  Plaintiff admitted to Sherman that he had struck Rucker in the face and left a threatening phone message.  Alison Downing, a former records clerk for the City, told Sherman that she had listened to a threatening message that plaintiff left on Rucker's voice-mail in December of 2003.  According to Downing, plaintiff stated something to the effect of "you better watch you[r] back when you leave work."  Downing Affidavit, attached as Ex. G to Defendants' Memorandum (Doc. #47) at 1.

After the investigation, Pryzby terminated plaintiff's employment for violating City Personnel Policy Nos. 415 and 418.  Neither Gilmore, Waller nor Gouvion participated in plaintiff's termination.

Plaintiff appealed his termination through all available levels of the city appeals process.  On July 15, 2004, the City conducted an appeal hearing to review the termination decision.  On July 22, 2004, the City Human Resource Specialist, Nicholas Sanders, sustained plaintiff's termination.  Plaintiff appealed  Sanders' decision to the Assistant City Administrator, Doug Luther.  Luther held a hearing on August 5, 2004.  On August 11, 2004, City Administrator Barbara Vernon sent plaintiff a letter informing him that she had adopted Luther's recommendation to uphold the termination.  Plaintiff appealed, and on August 23 and 30, 2004, the City Policy/Services Committee held a hearing.  On August 30, 2004, the Committee upheld plaintiff's termination.

In February of 2005, plaintiff and Rucker divorced.  In May of 2005, plaintiff pled guilty to

domestic assault in the third degree, a class C felony, as a result of the incident on June 5, 2004.  Rucker also obtained a civil judgment for $150,000 against plaintiff for damages related to her broken jaw.

On December 7, 2004, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Kansas Commission on Human Rights ("KHRC") alleging racial harassment, race discrimination and retaliation by the City.  His charge stated in part as follows:

> The City of Prairie Village treated me (a Black American) far differently than similarly situated White Employees when I was fired for allegedly physically abusing my wife during a domestic matter . . . [and] for allegedly making a threatening phone call to my wife while both of us were at work.

Ex. M to Defendants' Memorandum (Doc. #47), at 6.  Plaintiff's administrative charge does not refer to his promotion in February of 2004.

Plaintiff filed suit on July 20, 2006, alleging that defendants (1) subjected him to a racially hostile work environment; (2) because of race, placed conditions on his promotion and terminated his employment; and (3) in retaliation for protected activity, placed conditions on his promotion and terminated his employment, all in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.

In regard to his claim of retaliation, plaintiff is uncertain whether the City retaliated against him. He believes that his complaint about Gilmore in 2001 may have affected Pryzby's decisions to promote him with conditions and to terminate his employment.  Plaintiff testified that "I feel making these complaints . . . I believe that later on down the line, they probably didn't really want me working there, but I think they had to have me there, so to speak, because I'm not quite sure there's a lot of Africans there."   Plaintiff's Depo., attached as Ex. A to Defendant's Memorandum (Doc. #47) at 163.

## Analysis

Plaintiff claims that defendants (1) subjected him to a racially hostile work environment; (2)

8

because of race, placed conditions on his promotion and terminated his employment; and (3) in retaliation for protected activity, placed conditions on his promotion and terminated his employment. Defendants seek summary judgment on all claims.  The individual defendants assert that they are entitled to summary judgment because they are not an "employer" under Title VII.  As to the hostile work environment and discriminatory promotion claim, the City asserts that plaintiff did not timely exhaust administrative remedies.  Regarding termination because of race, the City asserts that it had a legitimate nondiscriminatory reason for terminating plaintiff's employment and that as a matter of law, plaintiff cannot establish pretext.  Regarding plaintiff's retaliation claim, the City asserts that plaintiff has not set forth a prima facie case because he cannot establish a causal connection between the protected activity and the adverse actions, e.g., the promotion with conditions and the termination of his employment.

## I.    Individual Defendants

Title VII makes it unlawful for an "employer" to "refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." See 42 U.S.C. § 2000e-2(a)(1).  Thus, the individual defendants are subject to liability only if, at the time of the alleged discrimination, they meet the statutory definition of "employer," to wit: "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year."  Walters v. Metro. Educ. Enter., Inc., 519 U.S. 202, 205 (1997) (quoting 42 U.S.C. § 2000e(b)).  It is well settled in the Tenth Circuit that individuals are not "employers" for purposes of Title VII.  Haynes v. Williams, 88 F.3d 898, 901 (10th Cir. 1996) (Title VII liability is appropriately borne by employers, not individual

supervisors).  Plaintiff does not address the individual defendants' argument that they are not employers under Title VII.  Based on the authorities cited above, the Court finds that the individual defendants are entitled to summary judgment.

## II.    Hostile Work Environment Claim

The City asserts that plaintiff did not timely file an EEOC charge on his harassment claim. Exhaustion of administrative remedies is a jurisdictional prerequisite to suit under Title VII.  See Simms v. Oklahoma, 165 F.3d 1321, 1326 (10th Cir. 1999).  To exhaust administrative remedies, a plaintiff generally must present his claim to the EEOC or authorized state agency (in Kansas, the KHRC) and receive a right-to-sue letter based on that charge.  Id. at 1326.  The charge "shall be in writing and signed and shall be verified," 29 C.F.R. § 1601.9, and must at a minimum identify the parties and "describe generally the action or practices complained of," 29 C.F.R. § 1601.12(b).  The charge tells the EEOC or KHRC what to investigate, provides the opportunity to conciliate the claim and gives the charged party notice of the alleged violation.  See Martinez v. Potter, 347 F.3d 1208, 1211 (10th Cir. 2003).  The requirement to present claims in a charge to the EEOC or a state agency serves the dual purposes of ensuring that the administrative agency has the opportunity to investigate and conciliate the claims and providing notice of the claims to the charged party.  See id.; Baker v. Via Christi Reg'l Med. Ctr., 491 F.Supp.2d 1040, 1049 (D. Kan. 2007).  Filing an untimely charge does not deprive the Court of jurisdiction.   See Zipes v. Trans World Airlines, 455 U.S. 385, 393 (1982).  The timeliness requirement is like a statute of limitations, i.e. subject to waiver, estoppel and equitable tolling.  Id.

In Kansas, plaintiff must file an administrative charge within 300 days of the alleged discriminatory action.  See 42 U.S.C. § 2000e-5(e)(1).  Plaintiff alleges that all of the racial harassment took place during July of 2001.  Plaintiff filed his charge on December 7, 2004, more than 300 days

later.  The City correctly asserts that as a matter of law plaintiff's charge of racial harassment was untimely.  Plaintiff does not allege that the time limit should be tolled.  The Court finds that plaintiff's racial harassment claim is time-barred.  The City is therefore entitled to summary judgment on plaintiff's racial harassment claim.[4]

## III.    Race Discrimination

A.    Discriminatory Promotion

The City asserts that plaintiff did not exhaust administrative remedies regarding his claim of discriminatory promotion practices, i.e. that the City discriminated against him by setting conditions on his promotion in February of 2004.  Courts will disregard allegations not "reasonably related" to the allegations of the administrative charge because to allow such consideration would circumvent the administrative agency's investigatory and conciliatory role as well as deprive the charged party of notice of the charge.  Smith v. Bd. of Pub. Utils., 38 F.Supp.2d 1272, 1284 (D. Kan. 1999); Harrell v. Spangler, Inc., 957 F.Supp. 1215, 1219 (D. Kan. 1997).

In this case, plaintiff's EEOC charge alleged a racially hostile work environment and discriminatory termination.  In pertinent part, his charge stated:

> The City of Prairie Village treated me (a Black American) far differently than similarly situated White Employees when I was fired for allegedly physically abusing my wife during a domestic matter . . . [and] for allegedly making a threatening phone call to my wife while both of us were at work.

Ex. M to Defendants' Memorandum (Doc. #47), at 6.  Although the charge stated that plaintiff was promoted in February of 2004, it does not allege any discriminatory action in regard to the promotion.

---

[4]    Even if plaintiff's racial harassment claim were not barred, the Court would find – for substantially the reasons set forth in defendants' opening brief – that the alleged harassment was not sufficiently severe or pervasive to constitute a hostile working environment.  See Defendants' Memorandum (Doc. #47) at 14-16.

Moreover, such a claim is not reasonably related to the claims which plaintiff did mention in the charge – hostile work environment, discriminatory termination and retaliation.  See Stubbs v. McDonald's Corp, 224 F.R.D. 668, 672 (D. Kan. 2004); see also Smith, 38 F. Supp. 2d at 1284 (claims concerning discriminatory job assignments not reasonably related to failure to promote claim).  The Court therefore dismisses plaintiff's claim that the City treated him less favorably than Caucasian employees with respect to his promotion.[5]

B.     Discriminatory Termination

With regard to plaintiff's claim that the City terminated his employment based on race, the City asserts that plaintiff cannot establish that its stated reason for discharge was a pretext for discrimination. To establish a prima facie case, plaintiff must show that (1) he belonged to a protected class; (2) he was qualified for his position; (3) he was discharged; and (4) the discharge occurred under circumstances which give rise to an inference of unlawful discrimination.  See Plotke v. White, 405 F.3d 1092, 1099 (10th Cir. 2005).  For purposes of the motion, the City assumes without conceding that plaintiff can establish a prima facie case.  The City asserts that as a matter of law, plaintiff cannot show that its reasons for terminating plaintiff were a pretext for discrimination.

The City contends that it terminated plaintiff's employment for legitimate non-discriminatory reasons.  Specifically, the City asserts that it terminated plaintiff's employment because it concluded that he violated City's Policies No. 415 (Employee Conduct) and No. 418 (Harassment/Sexual Harassment).  The City has articulated a legitimate, nondiscriminatory reason for terminating plaintiff's

---

[5]       Even if plaintiff's discriminatory promotion claim were administratively exhausted, the Court would find – for substantially the reasons set forth in defendants' opening brief – that plaintiff has not set forth a prima facie case of race discrimination in regard to his promotion.  See Defendants' Memorandum (Doc. #47) at 17-19.

employment.  See Bd. of Trustees of Keene State College v. Sweeney, 439 U.S. 24, 25 & n. 2 (1978) (employer's burden satisfied if it simply explains what it has done).

Because defendant has articulated a legitimate nondiscriminatory reason for the discharge, the burden shifts to plaintiff to present evidence from which a reasonable jury might concluded that defendant's proffered reason is pretextual, that is, "unworthy of belief." Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1165 (10th Cir. 1998) (quoting Randle v. City of Aurora, 69 F.3d 441, 451 (10th Cir. 1995)).  Plaintiff can show pretext by pointing to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence." Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997) (quotations omitted).  While "[t]his burden is not onerous . . . it is also not empty or perfunctory." Id. at 1323-24.  A plaintiff typically makes a showing of pretext in one of three ways: (1) evidence that defendant's stated reason for the adverse employment action was false, i.e. unworthy of belief; (2) evidence that defendant acted contrary to a written company policy prescribing the action to be taken under the circumstances; or (3) evidence that defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting plaintiff.  See Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1230 (10th Cir. 2000). More specifically, evidence of pretext may include "prior treatment of plaintiff; the employer's policy and practice regarding minority employment (including statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating . . . criteria); and the use of subjective criteria." Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1328 (10th Cir.), cert. denied, 528 U.S. 815 (1999).

Plaintiff argues that the City's explanation is unworthy of credence.  Specifically, plaintiff claims

13

that the City's determination that he admitted that he struck Rucker was incorrect and that he only struck her in self defense. Before the City fired plaintiff, it investigated the domestic incident between plaintiff and Rucker. The City concluded that plaintiff had been arrested and charged with assaulting Rucker, that plaintiff admitted that he had hit Rucker in the face, that Rucker sustained a fractured jaw in the incident, that plaintiff left Rucker a threatening phone message at work and that plaintiff had been arrested one other time for assaulting Rucker. Although plaintiff now contends that he hit Rucker in self defense, the City argues that based on the evidence, it was justified in concluding otherwise. The City has presented evidence that plaintiff admitted to the City attorney that he had struck Rucker. Further, although plaintiff now denies making a threatening phone call, the City has produced evidence that during the investigation, he admitted doing so. Plaintiff cannot point to any similarly situated Caucasian employees who were not terminated for violating the same or similar work rules. Plaintiff presents no other evidence that the City's determination that he violated the stated policies was a pretext for discrimination. See Elmore v. Capstan, Inc., 58 F.3d 525 (10th Cir. 1995). On this record, plaintiff has not shown a genuine issue of material fact whether the City's explanation is pretextual. The City is entitled to summary judgment on this claim.

## IV.   Retaliation

The City asserts that it is entitled to summary judgment on plaintiff's retaliation claim because he cannot demonstrate a prima facie case of retaliation under Title VII. To establish a prima facie case of retaliation under Title VII, plaintiff must show (1) that he engaged in protected activity under Title VII; (2) that he suffered adverse action contemporaneous with or subsequent to such activity; (3) a causal nexus between the protected activity and the adverse action. See Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1202 (10th Cir. 2006). The City argues that plaintiff cannot show

14

a causal connection between his complaint about racist comments in July of 2001 and his promotion in February of 2004 or his discharge in June of 2004.

To establish a causal connection between protected activity and adverse action, plaintiff may proffer "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." Haynes v. Level 3 Commc'ns, LLC, 456 F.3d 1215, 1228 (10th Cir. 2006), cert. denied, --- U.S. ----, 127 S.Ct. 1372, 167 L.Ed.2d 159 (2007).  The Tenth Circuit has held that for purposes of establishing a prima facie case, a one and one-half month period between protected activity and adverse action may, by itself, establish causation.  See Anderson v. Coors Brewing Co., 181 F.3d 1171, 1179 (10th Cir. 1999); see also Haynes, 456 F.3d at 1228 (standing alone, temporal proximity between protected activity and retaliatory conduct must be "very close in time").  Here, plaintiff complained of racist comments by a coworker in July of 2001.  He asserts that well over two years later, in February of 2004, the City retaliated by including conditions on his promotion, and that in June of 2004, it again retaliated when it terminated his employment.  On this record, the temporal proximity between the complaint in July of 2001 and the adverse actions in 2004 are insufficient as a matter of law  to establish causation for purposes of a prima facie case.  See Hysten, 296 F.3d at 1183 (three month time period between filing of race discrimination case and reprimand was insufficient, standing alone, to establish casual connection).  The City is entitled to summary judgment on plaintiff's retaliation claim.

**IT IS THEREFORE ORDERED** that Defendants' Motion For Summary Judgment (Doc. #46) filed November 19, 2007 be and hereby is **SUSTAINED.**  The Clerk is directed to enter judgment in favor of defendants on all claims.

Dated this 19th day of February, 2008 at Kansas City, Kansas.

15

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge